SARAH J. JAMES v. LUCY A. SUTTON.

FILED MARCH 16, 1893. No. 4569.

1. Probate and Contest of Will: CAPACITY OF TESTATOR: EVIDENCE. In an action to contest the probate of a will, the only issue being the capacity of the testator to make a will, *held*, that a verdict sustaining the will was supported by all the evi-dence.

2. ———: ———: ADMISSIBILITY OF EVIDENCE. In a contest over the probate of a will the parties objecting to such probate offered evidence tending to show that the testator many years before his death had given one of his children certain lands, describing them, etc., but had failed to convey the same. *Held*, : Properly excluded, because it did not relate to the questions at issue, and if such gift had been made and possession given in pursuance thereof and the conditions complied with, those facts might be shown in a proper case to enforce, quiet, or confirm the title.

ERROR from the district court of Saline county. Tried below before MORRIS, J.

*F. I. Foss*, for plaintiff in error.

*Hastings & McGintie*, contra.

MAXWELL, CH. J.

The will of Hannibal Sutton of Saline county was admitted to probate on the 31st of February, 1889, and Lucy Sutton, the widow of Hannibal Sutton, named as executrix and granted letters testamentary. From the order admitting the will to probate an appeal was taken to the district court by a daughter of Hannibal Sutton. The objections filed by her to the probate of the will are as follows:

"And now comes the said Sarah J. James, plaintiff herein, and says that she is an heir at law of the said Hannibal Sutton, deceased, to-wit, the daughter of the said Hannibal Sutton, and she objects to the probating of the will of Hannibal Sutton, deceased, for the following reasons:

"1. She alleges that at the time the said will was executed that the said Hannibal Sutton was old, feeble, infirm, and of unsound mind.

"2. That the said Hannibal Sutton made said will under the influence, at the dictation, and by the request of his wife, Lucy A. Sutton, and that the said will was not the will of the said Hannibal Sutton, but the will of Lucy A. Sutton.

"3. That at the time said will was made the said Hannibal Sutton was not capable of making any will at all, and whatever was done was a nullity and absolutely void, and that the said Lucy A. Sutton, wife of Hannibal Sutton, procured Hannibal Sutton to make said will by fraud and undue influence which she practiced upon the said testator, and that the said Hannibal Sutton was not of sound and disposing mind and memory, and that she used undue influence upon him to accomplish the purpose of said will, made as it was at her dictation by the said Hannibal Sutton.

"4. Wherefore the plaintiff prays that a hearing may be had, and that upon final hearing the court may find that at the time said will was executed that the said Hannibal Sutton was of unsound mind and not capable of making a will; that fraud and undue influence were practiced upon him, and that the said will may be declared null and void, and that the plaintiff may recover her costs herein expended."

The answer is a general denial.

On the issues thus formed the cause was submitted to a jury, which made special findings as follows:

1. "Was Hannibal Sutton, at the time of the executing of the will, of sound mind, and did he execute it of his own free will without any restraint or undue influence being brought to bear upon him?

"Answer. Yes.

2. "Was any undue influence brought to bear upon Hannibal Sutton by any one at the time of making his will?

"Answer. No.

3. "Was this will in question executed by Hannibal Sutton of his own free will?

"Answer. Yes.

4. "Was Hannibal Sutton of sufficient sound mind to make a will at the time of making the will in question in this case?

"Answer. Yes."

And there was a general verdict for the proponent, upon which judgment was rendered.  The principal errors relied upon are that the verdict is against the weight of evidence, and that the court erred in excluding certain testimony.  It will be observed that the principal question involved is the capacity of Mr. Sutton to make a will. The testimony tends to show that the contestant and a Mrs. Schook are daughters of Sutton by his first wife; that their mother died about fifteen years before the making of the will in question; that about a year after their mother died their father married a second time and two sons were the issue of the second marriage.  The second marriage does not appear to have been entirely harmonious, and his wife did not live with him continuously, but for two or more years had resided on her own property some distance from that of Sutton.  The place she resided on seems to have been given to her by her husband, and so far as we can see he felt an interest in the welfare of his wife and the living apart seems to have been without irritation.  The testimony also shows that Sutton was in feeble health for several months before his death; that he was living on his own land with the person who rented the farm, and had lived with that family for two or more years; that about five weeks before his death he had a severe attack of an obscure disease and was compelled to remain in bed; that about three weeks before his death the will in question was made.  Mr. E. A. Hancock, of De Witt, who prepared the will, testifies as follows:

Q. Now just state to the jury all the facts and transactions that occurred at that time—the day—how did you come to go there?

A. I think that Mr. Tierley or Mr. Tierley's boy stopped at my house, and left word that Mr. Sutton wanted me to come and see him, and that he wished me to write his will, and get prepared to write his will, and I accordingly, the next day, I think it was in the morning, went to his house, and he

James v. Sutton.

was in bed, and I was there some four to seven hours. I don't know how long, perhaps a third of a day. I took notes of what he wanted made, by his bed side, and then I went out in the other room and composed the will, and then came back, and in the presence of Mr. Tierley—I forget whether there was anybody else there or not, and read it over to him, and he sat up in bed, with a chair, I think, under him, bolstered up in bed, and he said that was all right; that that was just as he would have it, or something to that effect, and he signed it there, and we put our signatures as witnesses.

Q. During the time that you were there did you have any conversation with him?

A. Yes, sir, I had considerable conversation with him.

Q. About what matters?

A. About almost everything pertaining to his domestic relations, and his spiritual condition. He knew I was a minister of the gospel, as I had previously had conversation with him on that subject. This time we had a conversation on spiritual matters and his domestic relations, particularly in the presence of Mrs. Sutton, his wife.

Q. Who dictated what the terms of the will should be?

A. He alone.

Q. Did any one else dictate any portion of it?

A. Not a syllable or word.

There is no testimony in the record that fairly construed contradicts the testimony of Mr. Hancock. It is stated that Sutton was weak; that he seemed to be losing strength, etc., but there is no denial that he was rational and knew what he was doing when the will was made, and the verdict is sustained by all the evidence.

2. An attempt was made to prove that Sutton, a few years since, had given to one of his children 160 acres of land, but had failed to convey the same. This testimony was properly excluded. If such a gift was made and possession taken, in pursuance thereof, those facts may be shown

in a proper action to obtain title and the fact that the land was afterwards bequeathed would not defeat it, if the conditions have been complied with. Upon the whole case it is apparent that the judgment is right and it is

AFFIRMED.

THE other judges concur.